UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON REYNOLDS, et al., | Case No. 3:23-cv-01632-JSC |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, MOTION TO STAY** |
| EZRICARE LLC, et al., | |
| Defendants. | |
| | Re: Dkt. Nos. 41, 42, 43, 44 |

Milton and Danae Reynolds allege eye drops caused Mr. Reynolds to lose his sight in one eye and make various product liabilities claims against EzriCare, LLC ("EzriCare"), EzriRx, LLC ("EzriRX"), Global Pharma Healthcare Private Limited ("Global"), and Amazon.com, Inc. ("Amazon").  After carefully considering the parties' submissions, and the oral argument on October 26, 2023, the Court DENIES EzriRx's motion to dismiss for lack of personal jurisdiction, DENIES in part and GRANTS in part EzriCare's motion to dismiss, DENIES ExriCare's motion to stay, and DENIES Amazon's motion to dismiss.  Plaintiffs allege relatively straightforward product liability claims and plead cognizable claims against all Defendants.

## BACKGROUND

Global designed, manufactured, and packaged lubricating eye drops in India.  (Dkt. No. 36 ¶¶ 7, 20.)  Aru Pharma imported and distributed those eye drops to companies in the United States, including EzriCare.  (*Id.* ¶ 20.)  EzriCare designed an exterior label for those eye drops and marketed those eyedrops as "EzriCare Artificial Tears" to customers.  (*Id.*)  Ezricare listed the EzriCare Artificial Tears for sale on a few online platforms, including Amazon.  (Dkt. 42 at 11.)  EzriCare did not disclose the true manufacturer of Artificial Tears on the product's labeling.  (Dkt. No. 36 ¶ 51.)

Milton Reynolds purchased two bottles of EzriCare Artificial Tears from Amazon.  (*Id.* ¶ 35.)  After using the eye drops dozens of times, Mr. Reynolds developed an infection in his right eye.  (*Id.* ¶¶ 35-36.)  Doctors informed Mr. Reynolds he was suffering from a rare strain of bacteria: *Pseudomonas aeruginosa*.  (*Id.* ¶¶ 16, 38.)  Eventually, Mr. Reynolds lost sight in his right eye.  (*Id.* ¶ 40.)

In early 2023, the U.S. Center for Disease Control and Prevention ("CDC") reported an outbreak of *Pseudomonas aeruginosa*, and asserted the outbreak was linked to the use of EzriCare Artificial Tears.  (*Id.* ¶ 16; CDC, *Outbreak of Extensively Drug-resistant* Pseudomonas aeruginosa *Associated with Artificial Tears* (Feb. 1, 2023) https://emergency.cdc.gov/han/2023/han00485.asp.)  The CDC's investigation into EzriCare's Artificial Tears is ongoing.  (Dkt. No. 36 ¶ 16.)  The Food and Drug Administration ("FDA") has advised citizens to stop using EzriCare Artificial Tears.  (*Id.* ¶ 17.)

Plaintiffs bring claims against Defendants for Strict Liability (Manufacturing Defect, Design Defect, and Failure to Warn), Negligence and Gross Negligence, Negligent Failure to Warn, Negligent Failure to Recall, Breach of Implied Warranty, Fraud, and Loss of Consortium.  (Dkt. No. 36 at 1.)

## EZRIRX'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### I.      FACTUAL BACKGROUND

Mr. Reynolds purchased the artificial tears from Amazon's website while in his home in California and alleges injuries occurring in California due to his use of those tears.  (Dkt. No. 36 ¶¶ 10-11.)

EzriRx is an online marketplace platform that assists pharmacies in purchasing prescription medications, over-the-counter drugs, and pet medication.  (Dkt. No. 41-1 ¶ 7.)  EzriRX's headquarters and its principal place of business are both in New Jersey.  (*Id.* ¶ 5.)

### II.     DISCUSSION

#### A.      Legal Standard

Plaintiff "bears the burden" of establishing personal jurisdiction exists.  *In re Boon Global Ltd.,* 923 F.3d 643, 650 (9th Cir. 2019).  "Where, as here, the defendant's motion is based on

United States District Court
Northern District of California

1    written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie

2    showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d

3    1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

4    1073 (9th Cir. 2011)).  The Court may consider declarations and other evidence outside the

5    pleadings to determine whether it has personal jurisdiction.  *See Boon Global*, 923 F.3d at 650.

6    "[U]ncontroverted allegations in plaintiff's complaint must be taken as true," but courts "may not

7    assume the truth of allegations in a pleading which are controverted by affidavit."  *Mavrix Photo,*

8    *Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up).  Any "factual

9    disputes" must be "resolve[d] ... in the plaintiff's favor."  *Id.*

10       When there is no applicable federal statute governing personal jurisdiction, as is the case

11   here, the law of the forum state determines personal jurisdiction.  *Schwarzenegger v. Fred Martin*

12   *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  California's long arm statute is co-extensive with

13   federal due process requirements, and therefore the jurisdictional analyses under California law

14   and federal due process are the same.  *See* Cal. Civ. Proc. Code § 410.10; *Mavrix*, 647 F.3d at

15   1223.

16       Courts recognize two forms of personal jurisdiction, general and specific.  *Bristol-Myers*

17   *Squibb Co. v. Super. Court of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop*

18   *Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)).  General jurisdiction over a

19   nonresident corporation "is appropriate only when the corporation's contacts with the forum state

20   are so constant and pervasive as to render it essentially at home in the state."  *Martinez v. Aero*

21   *Caribbea*n, 764 F.3d 1062, 1066 (9th Cir. 2006) (cleaned up); *see also Tuazon v. R.J. Reynolds*

22   Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006) ("[T]he standard for general jurisdiction is

23   high" and "a defendant must not only step through the door, it must also [sit] down and [make]

24   itself at home.") (quotations and citations omitted).  By contrast, specific jurisdiction requires a

25   nonresident defendant's "suit-related conduct [to] create a substantial connection with the forum

26   State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

27       Plaintiff does not contend general jurisdiction exists.  (Dkt. No. 53 at 5 n.3.)  So, the Court

28   must analyze whether Plaintiff has made a prima facie showing of specific jurisdiction.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

### B.    Specific Jurisdiction

The Ninth Circuit applies a three-part test to determine if the exercise of specific personal jurisdiction over a nonresident is appropriate: (1) the defendant must purposefully direct its activities toward the forum or purposefully avail itself of the privileges of conducting activities in the forum; (2) the plaintiff's claim must arise out of or relate to those activities; and (3) the assertion of personal jurisdiction must be reasonable.  *Schwarzenegger*, 374 F.3d at 802.  It is Plaintiff's burden to plead allegations that satisfy the first two prongs, whereupon the burden shifts to Defendants to show why the exercise of specific personal jurisdiction would not be reasonable under prong three.  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### 1.    EzriRx Purposefully Directed its Activities to California

Because Plaintiffs' claims sound in tort, the Court applies the "purposeful direction test" and asks whether Defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (cleaned up).

Plaintiffs assert "EzriRx also participated in the marketing and distribution of Artificial Tears."  (Dkt. No. 36 ¶ 47.)  Plaintiffs cite to EzriRx's Facebook page, which displays a photo of a conference where EzriRx's booth displayed EzriCare's products, including EzriCare's Artificial Tears.  (*Id.* ¶ 48.)  Plaintiffs contend "EzriRx specifically directed its activities to California" because "EzriRx specifically calls pharmacies . . . in California . . . to market and sell products."  (*Id.* ¶ 49.)

EzriRx does not contest it "purposely directed" is activities to California.  "[C]alling pharmacies . . . in California" is an intentional act, satisfying the first prong of the test.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004) (defining an intentional act as "an intent to perform an actual, physical act in the real world," and holding placing an advertisement in a regional paper is an intentional act).  Plaintiff has also made a prima facie showing EzriRx's acts were expressly aimed at the forum state—California—which requires "something more" than "a foreign act with foreseeable effects in the forum state."  *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (cleaned up).  An action is

expressly aimed when "the 'defendant himself' creates [contacts] with the forum State." *Walden*, 571 U.S. at 284-85 (quoting *Burger King*, 471 U.S. at 475). Here, EzriRx expressly aimed its products at California by calling pharmacies in California to market its products. Finally, by marketing products to California, EzriRx likely knew any injuries caused by those products were "likely to be suffered" in California. So, Plaintiffs have established EzriRx purposefully directed its conduct to California.

### 2.   Plaintiffs' Claims "Relate to" EzriRx's California Activities

In *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court held "arise out of" and "relate to" are separate requirements, and each is independently sufficient for a finding of personal jurisdiction. 141 S. Ct. 1017, 1026 (2021). "[F]or a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, 'a company . . . serves a market for a product in the forum State and the product malfunctions there.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023) (quoting *Ford*, 141 S. Ct. at 1026-27).

In *Ford,* the Supreme Court held Ford Motor Company was subject to specific personal jurisdiction for claims of injuries caused by a Ford Explorer in Montana, and by a Ford Crown Victoria in Minnesota, despite the vehicles having been sold by Ford out-of-state. *Id.* at 1028. The Court explained Ford had engaged in marketing efforts in Montana and Minnesota, including marketing efforts related specifically to Ford Explorers and Crown Victorias. *Id.* Both models are for sale in Montana and Minnesota, and Ford distributes replacement parts to its own dealers and other repair shops in both states. *Id.* So, the Court concluded, there was a "strong relationship among the defendant, the forum, and the litigation," and specific jurisdiction was warranted even though there was not a causal connection between the defendants' activities in the forum states and the plaintiffs' claims. *Id.*

In *Yamashita*, the court focused on three aspects of *Ford*'s reasoning to "provide guidance on how to determine whether a defendant's contacts sufficiently relate to a plaintiff's injury." *Yamashita*, 62 F.4th at 505. First, "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts" because, "[i]n effect, relatedness proxies

for causation" in some cases. *Id.* Second, "a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 506. And third, "'relate to' does not mean anything goes," and instead "relatedness requires a close connection between contacts and injury." *Id.* (cleaned up).

Here, Plaintiffs allege (1) "EzriRx [] participated in the marketing and distribution of Artificial Tears," (Dkt. No. 36 ¶ 47), and (2) "EzriRx specifically calls pharmacies . . . in California . . . to market and sell products." (*Id.* ¶ 49.) Construing these allegations "in light most favorable to the plaintiff," *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018), they support an inference EzriRx marketed and distributed EzriCare Artificial Tears to California pharmacies. And, although EzriRx offers evidence in support of its motion, it does not deny that it marketed EzriCare Artificial Tears to California pharmacies.

Plaintiffs therefore allege injuries which relate to ExriRx's California contacts: Plaintiffs allege Mr. Reynolds purchased EzriCare Artificial Tears while in California (Dkt. No. 36 ¶¶ 2, 35), he used those eyedrops in California (*Id.*), and Mr. Reynolds was injured in California. (*Id.* ¶ 2.) "[S]imilar injuries will tend to be caused" by EzriRx's marketing and distributing Artificial Tears in California because EzriRx's actions increased the likelihood consumers purchased Artificial Tears, and thus increase the likelihood other consumers were injured by those tears. *Yamashita*, 62 F.4th at 505. EzriRx "should have foreseen the risk that its contacts might cause injuries like that of the plaintiff," because, by marketing and distributing a product designed to be applied directly to consumers' eyes, the risk of infection resulting from that product was foreseeable. *Id.* at 506. Finally, there is a "close connection between contacts and injury" since Plaintiffs allege EzriRx marketed and distributed the allegedly harmful product to California, just as the *Ford* plaintiffs alleged Ford marketed the allegedly dangerous car models to the forum states. *Id.*

Defendants object that, in *Ford,* "the Court highlighted Ford's advertising within the forum state and stated that without such contacts 'the owners of these cars might never have bought them, and so these suits might never have arisen, except for Ford's contacts with their home States.'" (Dkt. No. 58 at 5 (quoting *Ford*, 141 S. Ct. at 1029).) They argue "unlike *Ford,* EzriRx

6

1    is not advertising to consumers like the Plaintiffs because it does not service consumers." (*Id.*)  In

2    other words, EzriRx is saying even without its advertisements to pharmacies in California,

3    Plaintiffs' claims would be exactly the same.  But in *Ford*, the Supreme Court rejected that exact

4    argument as requiring causation for specific jurisdiction.  The *Ford* Court explained the

5    manufacturer would still be subject to personal jurisdiction "even supposing . . . without the

6    company's Montana or Minnesota contacts the plaintiffs' claims would be just the same."  *Ford*,

7    141 S. Ct. at 1029.  While the *Ford* Court noted it was "far from clear" the manufacturer's in-state

8    marketing played no role in the plaintiffs' decisions to purchase the cars, its holding did not rely

9    on that observation.  So, under *Ford,* it is irrelevant whether EzriRx's marketing in California

10   actually played a role in Mr. Reynold's decision to purchase EzriCare Artificial Tears.

11          At oral argument, EzriRx attempted to further distinguish *Ford* from this case, asserting

12   EzriRx is a "marketplace" and merely distributes products to pharmacies rather than directly to

13   consumers.  However, this does not distinguish EzriRx from *Ford*: the Supreme Court noted Ford

14   distributed its cars not to consumers, but to "licensed dealerships."  *Ford*, 141 S. Ct. at 1022.

15   Moreover, the car owners in *Ford* had not directly purchased the cars from any licensed dealership

16   but instead came into possession of those cars through "later resales and relocations by

17   consumers."  *Id.* at 1023.  Further, EzriCare Artificial Tears is an over-the-counter product so,

18   while marketed to pharmacies, it likely sits on pharmacy's consumer-facing shelves.  Thus, like

19   *Ford,* it is "far from clear" EzriRx's California marketing and distributing played no role in

20   Plaintiffs' decision to purchase Artificial Tears from Amazon.  In sum, that EzriRx does not sell

21   directly to consumers does not distinguish this case from *Ford.*

22                    **3.       The Assertion of Personal Jurisdiction Is Reasonable**

23          Since Plaintiffs established the first two prongs of specific jurisdiction, the burden then

24   shifts to EzriRx to "to 'present a compelling case' that the exercise of jurisdiction would not be

25   reasonable.  *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

26   462, 476–78 (1985)).  EzriRx has provided no reasons why it would be unreasonable for it to be

27   subject to jurisdiction in this case.

28          So, EzriRx's motion to dismiss for lack of personal jurisdiction is DENIED.

### EZRICARE'S MOTION TO DISMISS

Dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure Rule 8(e) instructs "[p]leadings must be construed so as to do justice." Fed. R. Civ. Proc. 8(e). Plaintiffs' theory of liability is simple: Mr. Reynolds purchased lubricating eye drops which were infected by a dangerous strain of bacteria and, after using those eye drops, Mr. Reynolds was infected with that strain of bacteria that caused him to go blind in one eye. EzriCare's label was on those eyedrops, so Mr. Reynolds sued EzriCare asserting products liability claims.

EzriCare brings a motion to dismiss all Plaintiffs' claims, for a multitude of reasons. However, most of EzriCare's assertions strain credulity: Plaintiffs have adequately pled allegations against EzriCare, and therefore EzriCare's motion to dismiss is DENIED in part. However, the Court finds Plaintiffs have failed to adequately allege a claim for fraud or a claim for negligent failure to recall, so EzriCare's motion to dismiss is GRANTED as to those 2 claims.

### A.   Lumping Together Defendants

First, EzriCare argues Plaintiffs' complaint fail to adequately allege what role each Defendant played in the harm, making it "exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." (Dkt. No. 42 at 13 (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)).)

EzriCare cites a series of district court cases to demonstrate Plaintiffs must "identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (Dkt. No. 42 at 13 (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)).)

EzriCare also asserts Plaintiffs violated Federal Rule of Civil Procedure Rule 10 because their pleading is a "shotgun pleading" and such pleadings are prohibited because they "deprive[]

1    Defendants of knowing exactly what they are accused of doing wrong." (Dkt. No. 42 at 14

2    (quoting *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at

3    *4 (C.D. Cal. June 30, 2010)). EzriCare urges "it is implausible that Plaintiffs have the same

4    allegations against EzriCare *and* Amazon, or EzriCare *and* Global." (Dkt. No. 42 at 14.) Not so.

5    Under California law, "[r]egardless of a defendant's position in the chain of distribution, the basis

6    for his liability remains that he has marketed or distributed a defective product, and that product

7    caused the plaintiff's injury." *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 348 (2012) (cleaned up).

8    Plaintiffs allege all Defendants—EzriCare, EzriRx, Global, and Amazon—are part of the chain of

9    distribution. So, the theory of liability is the same for each.

10    　　　Further, construing the complaint allegations "in light most favorable to the plaintiff,"

11    *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018), Plaintiffs do clearly

12    allege what role EzriCare played in each claim: the complaint identifies EzriCare as an "apparent

13    manufacturer[] of Artificial Tears," (Dkt. No. 36 ¶ 50) and alleges EzriCare "packaged, labeled,

14    marketed, advertised, supplied, distributed, and sold the product" that injured Mr. Reynolds. (*Id.* ¶

15    56.) EzriCare's motion to dismiss all claims on this basis is denied.

16    　　　**B.    Strict Liability – Manufacturing Defect Claim**

17    　　　EzriCare admits "[t]o survive a challenge to a manufacturing defect claim under Fed. R.

18    Civ. P. 12(b)(6), a plaintiff must 'identify/explain how the [product] either deviated from

19    [defendant's] intended result/design or how the [product] deviated from other seemingly identical

20    [product] models.'" (Dkt. No. 42 at 15 (quoting *Trabakoolas v. Watts Water Techs., Inc.*, No. 12-

21    CV-01172, 2012 WL 2792441, at *4 (N.D. Cal. July 9, 2012).) Plaintiffs' complaint plausibly

22    alleges the product "deviated" from "intended result/design" as it allegedly caused Mr. Reynolds

23    to suffer from infection and blindness. To accept EzriCare's argument would require the Court to

24    draw the inference EzriCare's Artificial Tears were intended and designed to result in infection

25    and blindness. Not plausible, even if the Court was allowed to draw inferences in EzriCare's

26    favor, which it is not.

27    　　　Defendants further assert Plaintiffs allege their product "was contaminated with

28    *Pseudomonas aeruginosa* without any factual pleading as to the nature of the manufacturing

United States District Court
Northern District of California

United States District Court
Northern District of California

1  defect," for example "Plaintiffs plead no facts regarding what part of the manufacturing process

2  caused the defect."  (Dkt. No. 42 at 16.)  But they are not required to plead such facts to state a

3  claim.  So, EzriCare's motion to dismiss Plaintiff's manufacturing defect claim (Count I) is

4  denied.

5       **C.**     **Strict Liability – Design Defect Claim**

6       California law recognizes two tests for establishing a design defect under product liability

7  law: the "consumer expectations test" and the "risk-benefit test."  *See Barker v. Lull Eng'g Co.*, 20

8  Cal. 3d 413, 418 (1978).  Plaintiffs' complaint adequately alleges a design defect under either

9  standard.  As to the "consumer expectations test," Plaintiffs plausibly allege Mr. Reynolds

10  purchased the product because he had "dry eyes" and desired "lubricating eye drops," (Dkt. No. 36

11  ¶ 34), but, contrary to expectations, the product resulted in an infection that ate his cornea and

12  caused him to go blind in one eye.  (*Id.* ¶ 36, 40, 61.)  As to the "risk-benefit test," Plaintiff

13  plausibly pleads the "risks" of such infection and blindness outweigh any product benefits.  (*Id.* ¶

14  61.)

15       EzriCare's arguments asserting otherwise ignore Plaintiffs' allegations.  EzriCare asserts

16  "Plaintiffs plead nothing about how the product did not perform 'safely.'"  (Dkt. No. 42 at 17.)  To

17  the contrary, Plaintiffs' complaint repeatedly alleges EzriCare's Artificial Tears caused him to

18  experience a severe eye infection (Dkt. No. 36 ¶¶ 13, 36, 37), and ultimately, go blind in one eye.

19  (*Id.* ¶¶ 1, 13, 14, 40.)  Surely, EzriCare is not asking the Court to draw the inference that a product

20  that causes such damage is performing "safely."  EzriCare's motion to dismiss the design defect

21  claim (Count II) is also denied.

22       **D.**     **Strict Liability – Failure to Warn Claim and Negligent Failure to Warn Claim**

23       EzriCare also moves to dismiss Plaintiffs' strict liability failure to warn claim (Count III)

24  and negligent failure to warn claim (Count V).

25       A strict liability failure to warn claim under California law requires Plaintiffs prove the

26  "defendant did not adequately warn of a particular risk that was known or knowable in light of the

27  generally recognized and prevailing best scientific and medical knowledge available at the time of

28  manufacture and distribution."  *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987,

1    1002 (1991).  A negligent failure to warn claim under California law requires Plaintiff establish "a

2    manufacturer or distributor did not warn of a particular risk for reasons that fell below the

3    acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and

4    warned about."  *Anderson*, 53 Cal. 3d at 989.

5        Plaintiffs adequately plead both claims.  Plaintiffs allege the risks were "known or

6    knowable" at the time Mr. Reynolds purchased EzriCare's Artificial Tears because: (1) "scientists

7    have known for decades that, when *Pseudomonas aeruginosa* is introduced into the eye" it can

8    cause irritation and blindness, (Dkt. No. 36 ¶ 17), and (2) "[m]edical professionals have long

9    warned that placing a preservative-free eyedrop inside a multi-use eyedrop bottle is dangerous,

10   precisely because there is no preservative to kill bacteria."  (*Id.* ¶ 31.)  Plaintiffs also plausibly

11   allege EzriCare did not adequately warn of this risk, explaining the "label did not warn, for

12   example, because the product is preservative-free and irresponsibly packaged it is more

13   susceptible to contamination and more likely to cause serious, life-altering infections."  (*Id.* ¶ 33.)

14       EzriCare asserts Plaintiffs "fail to make a connection between the 'general' knowledge that

15   *Pseudomonas aeruginosa* is dangerous to the eye or that placing a preservative-free eye drop

16   inside a multi-use eye drop bottle is dangerous, and EzriCare's knowledge of the particular risk

17   that these eye drops here would be infected with this particular bacteria."  (Dkt. No. 58 at 7.)

18   However, Plaintiffs are not required to prove nor allege EzriCare *actually knew* the eye drops were

19   infected.  Rather, Plaintiffs must only allege such a risk was "knowable" (in the case of strict

20   liability) or that a "reasonably prudent manufacturer would have known" about it (in the case of

21   negligent failure to warn).  Plaintiffs plausibly allege both.  So, EzriCare's motion to dismiss

22   Plaintiffs' strict liability failure to warn claim (Count III) and negligent failure to warn claim

23   (Count V) are both denied.

24       **E.    Fraud Claims**

25       Count VIII of Plaintiffs' complaint alleges fraud. Federal Rule of Civil Procedure 9(b)

26   requires a party alleging fraud to "state with particularity the circumstances constituting fraud or

27   mistake" though "[m]alice, intent, knowledge, and other conditions of a person's mind may be

28   alleged generally."  Fed. R. Civ. Proc. 9(b).  "Rule 9(b) demands that, when averments of fraud

United States District Court
Northern District of California

are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

Plaintiffs fail to establish which of EzriCare's specific statements or EzriCare's specific conduct constitute fraud. For example, Plaintiffs' fraud claim alleges EzriCare "represented that" the artificial tears were "safe, effective, comparable to Refresh Plus Eye Drops, not adulterated with harmful bacteria, could be used so that it would not become adulterated with harmful bacteria, was prepared under sanitary conditions, and sterile" but that, in actuality, EzriCare's product "was not comparable to Refresh Plus Eye Drops" and "was or became contaminated with harmful bacteria." (Dkt. No. 36 ¶ 88.) However, Plaintiffs never cite to a specific statement from EzriCare—for example, some quote from EzriCare's packaging, website, or marketing—that states the product was "safe" or "not adulterated with harmful bacteria" or "prepared under sanitary conditions." Without such specificity, Plaintiffs fail to meet the pleading standards required by Rule 9(b).

At oral argument, Plaintiffs pointed to the "packaging" of the EzriCare Artificial Tears bottle as the source of the fraudulent claims, but the picture of that packaging in the complaint is illegible. (*See id.* at 15.) Moreover, nowhere in the complaint do Plaintiffs quote any specific portions of that packaging, making it unclear which part of EzriCare's label Plaintiffs are alleging constitutes fraud. Plaintiffs also assert EzriCare's statement that EzriCare's Artificial Tears were "comparable" to Refresh Plus Eye Drops was fraudulent. (*Id.* ¶ 88.) However, Plaintiffs admit "the language on the Artificial Tears packaging specifically compares active ingredients" of EzriCare Artificial Tears and Refresh Eye Drops, and Plaintiffs do not allege any difference in the active ingredients between the two brands. (Dkt. No. 52 at 20-21.) Thus, Plaintiffs fail to meet the pleading standards for fraud as they fail to "set forth what is false or misleading about a statement, and why it is false," *Vess*, 317 F.3d at 1106 (quotations and citations omitted).

Without any indication of which specific statements or conduct Plaintiffs assert are

1    fraudulent, Plaintiffs have not met the requirements of Rule 9(b).  So, EzriCare's motion to

2    dismiss Plaintiffs' fraud claim (Count VIII) is granted.

3      **F.**  **Breach of Implied Warranty**

4      Count VII asserts a Breach of Implied Warranty of merchantability under both the

5    Common Law and California Civil Code § 1792.  (Dkt. No. 36 ¶¶ 84-86.)  As EzriCare admits,

6    "[t]he core test of merchantability is fitness for the ordinary purpose for which such goods are

7    used."  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) (cleaned up).  Plaintiffs

8    adequately allege EzriCare's eye drops were not fit for their ordinary purpose because, while the

9    ordinary purpose of such eye drops is to alleviate dry eyes, the eye drops resulted in infection and

10   blindness.

11     EzriCare asserts "a plaintiff claiming breach of an implied warranty of merchantability

12   must show that the product 'did not possess even the most basic degree of fitness for ordinary

13   use," and "[s]urely more than four months of use of the EzriCare Artificial Tears by Plaintiff

14   Reynolds *without issue* is beyond the 'most basic degree' of fitness for ordinary use.  (Dkt. No. 42

15   at 16 (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).)  First, as EzriCare

16   admits, their "four month" assertion is wrong factually: while Plaintiffs pled Mr. Reynolds used

17   the product "dozens of times," Plaintiffs also pled Mr. Reynolds used the product for one to two

18   months before experiencing eye pain.  (Dkt. No. 36 ¶¶ 35-36.)  EzriCare's assertion is also

19   incorrect as a legal matter: just because a product performs well for a period of time does not mean

20   the product is fit for ordinary use.  *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp.

21   2d 1220, 1243 (C.D. Cal. 2011) ("A vehicle that operates for some time after purchase may still be

22   deemed 'unfit for ordinary purposes' if its components are so defective that the vehicle becomes

23   inoperable within an unacceptably short period of time."); *Mexia v. Rinker Boat Co.*, 174 Cal.

24   App. 4th 1297, 1304 (2009) ("The implied warranty of merchantability may be breached by a

25   latent defect undiscoverable at the time of sale.").

26     So, EzriCare's motion to dismiss the implied warranty of merchantability claim (Count

27   VII) is denied.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### G.   Negligence[1]

In Count IV, Plaintiff alleges EzriCare is liable for "negligence."  "To prevail on their negligence claim, plaintiffs must show that [defendant] owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries."  *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001).

Plaintiffs allege EzriCare "failed to implement protocols to ensure that the product was safe and sterile, while simultaneously representing that the product was safe and in compliance" with federal regulations.  (Dkt. No. 36 ¶ 72.)  Further, Plaintiffs allege EzriCare is an "apparent manufacturer[]" of the artificial tears, and thus "owed Plaintiff a duty of care" including "a duty of reasonable care to manufacture, test, design, distribute, package, label, supply, market, advertise, and/or sell a product that was not unreasonably safe for human use."  (*Id.* ¶ 68.)

EzriCare argues Plaintiffs did not and cannot allege any facts to demonstrate the alleged defect "was due to any negligence by EzriCare" since Global manufactured and packaged the artificial tears and EzriCare's only role was putting its label on the product.  (Dkt. No. 42 at 26.) However, Plaintiffs have pled EzriCare had a duty to "test" the product to ensure it was safe and sterile, and that EzriCare violated that duty.  EzriCare does not cite any case that defeats that liability theory.  So, Plaintiffs have pled EzriCare engaged in negligent conduct (Count IV).

### H.   Negligent Failure to Recall

Count VI alleges EzriCare negligently failed to recall the Artificial Tears.  "[T]he determination of negligence under a failure to recall . . . theory 'focuses on due care and the reasonableness of the defendant's conduct.'"  *In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2021 WL 5161926, at *2 (N.D. Cal. Nov. 5, 2021), *appeal dismissed*, No. 21-17016, 2023 WL 3848403 (9th Cir. Mar. 31, 2023) (quoting *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1831 (1994)).  "California law is in accord that it is defendant's knowledge of the defect and the serious risk of harm that gives rise to a duty of care."  *Id.* (citing *Lunghi v. Clark Equip. Co.*, 153 Cal. App. 3d 485, 494 (1984) ("Clark's knowledge of the injuries caused by these

---

[1] In Count IV, Plaintiff alleges EzriCare is liable for both "negligence" and "gross negligence." As discussed at the hearing, since Plaintiff has pled one count, the Court is treating this Count as a single claim for negligence.

1    features imposed a duty to warn of the danger, and/or a duty to conduct an adequate retrofit

2    campaign.")).

3            Mr. Reynolds purchased EzriCare Artificial Tears on June 24, 2022, and began using the

4    product in August or September of 2022.  (*Id.* ¶ 35.)  Plaintiffs plead the *Pseudomonas aeruginosa*

5    bacteria began affecting people in May 2022.  (Dkt. No. 36 ¶ 15.)  In January of 2023, the CDC

6    indicated a link between the ongoing bacterial infections and EzriCare's Artificial Tears.  (*Id.* ¶

7    21.)  However, Plaintiffs do not ever allege when the CDC investigation began, or when EzriCare

8    knew, or should have known, there was a link between the bacterial infection and their product.

9    While Plaintiffs allege "[g]iven the months-long CDC investigation remained pending prior to the

10   recall, on information and belief, Defendants became aware or should have become aware of this

11   defect after the product was sold," Plaintiffs provide no explanation for how EzriCare would have

12   become aware of the link between their product and the CDC's investigation into the bacterial

13   infection prior to January 2023.  (*Id.* ¶ 82.)  Since Mr. Reynolds was injured before January 2023,

14   Plaintiffs' allegations are insufficient to support a negligent failure to recall claim.

15           So, EzriCare's motion to dismiss the negligent failure to recall claim (Count VI) is granted.

16   **I.      Loss of Consortium Is Derivative of All the Other Counts in the Complaint**

17           Finally, EzriCare moves to dismiss Count IX, Plaintiffs' loss of consortium claim, which

18   alleges Ms. Reynolds "suffered loss of love, companionship, comfort, care," and "moral support,"

19   among other things, because of Mr. Reynold's injuries.  (Dkt. 36 ¶¶ 90-91.)  Defendants argue this

20   claim is "derivative and dependent on the existence of a cause of action for tortious injury to Mr.

21   Reynolds."  (Dkt. No. 42 at 28.)  Since the Court has not dismissed most of Plaintiffs' claims

22   against EzriCare, the Court declines to dismiss the loss of consortium claim (Count IX).

23                                                 ***

24           In sum, the Court GRANTS EzriCare's motion to dismiss as to Plaintiff's fraud and

25   negligent failure to recall claims and DENIES the motion as to all other claims.

26   **J.      Leave to Amend**

27           Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so

28   requires."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  The

United States District Court
Northern District of California

Court gives Plaintiffs leave to amend their fraud claim (Count VIII) and their negligent failure to recall claim (Count VI).  Plaintiffs shall file any amended complaint by November 20, 2023.

<strong>EZRICARE'S MOTION TO STAY</strong>

## I.      FACTUAL BACKGROUND

Global Pharma Healthcare Private LTD ("Global") is the sole manufacturer of all artificial tears products distributed by Ezricare.   Global manufactures artificial tears out of Tami Nadu, India.

Aru Pharma, Inc. ("Aru Pharma") acted as an intermediary between Global and downstream distributors, such as EzriCare.  Aru Pharama imported Global's artificial tears to the United States, then transported those tears to EzriCare.  Plaintiffs filed this case on February 22, 2023.  (Dkt. No. 1.)  On February 27, 2023, Aru Pharam filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York under Chapter 11 of the United States Bankruptcy Code. (Dkt. No. 55-1 at 4-7.)  On March 20, 2023, Plaintiffs voluntarily dismissed their action against Aru Pharma (Dkt. No. 43 at 12 n.17).  Currently, an automatic stay is in place and parties are prohibited from undertaking certain actions against Aru Pharma.  11 U.S.C. § 362(a).

## II.     DISCUSSION

Ezricare argues for a stay for three reasons: (1) "Aru Pharma is a necessary and indispensable party in this litigation" because Aru Pharma is "the only party that directly communicated with manufacturer Global Pharma Healthcare Private LTD" so "[p]roceeding without Aru Pharma will result in incomplete discovery, extreme inefficiencies, and significant prejudice to the remaining parties" (Dkt. No. 43 at 7.); (2) "a stay is necessary . . . to ensure Defendant Global, manufacturer from Tamil Nadu, India, is properly served" because Global is a "necessary party" (*Id.* at 7-8.); and (3) under the doctrine of primary jurisdiction.  (*Id.* at 8.)

### A.      Aru Pharma Is Not a Necessary Party

Federal Rule of Civil Procedure 19 addresses the required joinder of parties.  Fed. R. Civ. Pro. 19.  Rule 19(a) provides a necessary, or "required," party is one who:

(A) in that person's absence, the court cannot accord complete relief

16

among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Proc. 19(a). "Rule 19(a) 'defines the persons whose joinder in the action is desirable' in the interests of just adjudication." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (quoting Fed.R.Civ.P. 19 Advisory Committee Note (1966)).

Aru Pharma is a permissive rather than a necessary party because "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (citing 1966 Advisory Committee Notes to Fed. R. Civ. P. 19(a)). Under California law, all parties in the chain of distribution are jointly and severally liable under a claim of strict product liability. *Romine v. Johnson Controls, Inc.*, 224 Cal. App. 4th 990, 1010 (Cal. App. 2014).

EzriCare alleges there is an "active participant" exception to the ordinary rule in *Temple*. However, the Ninth Circuit has not adopted this exception. *See JNK Entm't, LLC v. SP Sales & Distrib.*, No. CV-15-01908-RGK-FFMx, 2016 WL 9046673, at *3 (C.D. Cal. Mar. 2, 2016) (stating that there is no active participant rule in the Ninth Circuit, and noting the district court cases finding an active participant exception all involve "either subsidiary corporations as absent parties or antitrust claims"). EzriCare has not persuaded the Court there is good reason to depart from *Temple* and adopt such a rule now. So, Aru Pharma is not a necessary party, and the Court will not stay the case until Aru Pharma can be joined.

**B.    A Discretionary Stay Is Not Warranted**

EzriCare also moves for a stay under the Court's discretionary case-management powers. "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). When considering whether to grant a stay, courts should consider "the possible damage which may result from the granting of a stay, the

1    hardship or inequity which a party may suffer in being required to go forward, and the orderly

2    course of justice measured in terms of the simplifying or complicating of issues, proof, and

3    questions of law which could be expected to result from a stay." *Id.*

4              EzriCare argues "granting a stay would greatly promote judicial economy" because

5    "[m]uch of the discovery necessary to Plaintiffs' claims is only available from Aru Pharma," and

6    since Aru Pharma is currently in bankruptcy proceedings, it may be difficult or impossible to get

7    such discovery.  (Dkt. No. 43 at 14.)  Defendant cites *In re Residential Capital, LLC*, 480 B.R.

8    529, 540 (Bankr. S.D.N.Y. 2012), and argues "discovery served on Aru Pharma will likely

9    interfere with reorganization efforts and be prohibited" because "[i]f EzriCare is found liable, Aru

10   Pharma could have an obligation to indemnify EzriCare or owe EzriCare for damages it incurred

11   related to Aru Pharma's conduct."  (Dkt. No. 60 at 11.)

12             The Court is unpersuaded.  First, EzriCare has not identified what evidence Aru Pharma

13   has that Plaintiffs require to prove their claims against EzriCare or that EzriCare requires to defend

14   Plaintiffs' claims against it.  Second, it is pure speculation that Aru Pharma will not cooperate in

15   discovery.  Third, and most importantly, granting a stay in this case will result in hardship to

16   Plaintiffs—who purchased EzriCare Artificial Tears thinking EzriCare was the sole manufacturer,

17   and without any knowledge that Aru Pharma or Global played any role. Mr. Reynolds is now

18   blind in one eye and should not be required to stay his action while a bankruptcy proceeding

19   entirely unrelated to him proceeds.

20             **C.      Global Is Not a Necessary Party**

21             For the same reasons Aru Pharma is merely a permissive rather than a necessary party,

22   Global is a permissive party.  The Court will not stay the action while Global is served.  There is

23   no reason discovery of the Ezri entities should not commence immediately.

24             **D.      The Doctrine of Primary Jurisdiction Does Not Warrant a Stay**

25             Under the doctrine of primary jurisdiction, "in cases raising issues of fact not within the

26   conventional experience of judges or cases requiring the exercise of administrative discretion,

27   agencies created by Congress," courts have discretion to stay the case to allow the relevant agency

28   to make the initial decision.  *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956).  "Although

United States District Court
Northern District of California

the question is a matter for the court's discretion," courts in the Ninth Circuit consider four non-exclusive factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc*., 307 F.3d 775, 781 (9th Cir. 2002). "[P]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir.2002). It is not "intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* (cleaned up).

The Court declines to stay the action under the doctrine of primary jurisdiction. Investigations by the CDC and FRA remain ongoing. (Dkt. No. 36 ¶ 16.) However, Plaintiffs' claims do not rely on the resolution of those investigations. Instead, Plaintiffs' claims are specific to Mr. Reynolds's injury, and whether the EzriCare Artificial Tears Mr. Reynolds purchased caused his injury. Courts are well-equipped to handle personal injury disputes of this nature. Moreover, EzriCare has provided no indication the issues involved in this case "require[] expertise of uniformity in administration." Indeed, the resolution of this case will not threaten or encroach on agency authority.

***

In sum, the Court DENIES EzriCare's motion for a stay in its entirety.

## AMAZON'S MOTION TO DISMISS

## I.      DISCUSSION

Amazon moves to dismiss Plaintiffs' breach of implied warranty of merchantability claim. Plaintiffs bring their breach of implied warranty claims under both the Song-Beverly Consumer Warranty Act, Civil Code sections 1790, et seq. and the California Uniform Commercial Code section 2314. Specifically, Amazon asserts any claims under the California Song-Beverly

19

1   Consumer Warranty Act fail because Amazon was not a "manufacturer" or "retail seller" under

2   that act.  Moreover, Amazon asserts any claim under the California Uniform Commercial Code

3   fails because there was no vertical privity between Amazon and Mr. Reynolds.

4         **A.**      **Implied Warranty of Merchantability under the Song-Beverly Consumer**
                  **Warranty Act**

5         The Song-Beverly Consumer Warranty Act provides "every sale of consumer goods that

6   are sold at retail . . . shall be accompanied by the manufacturer's and the retail seller's implied

7   warranty that the goods are merchantable."  Cal. Civ. Code § 1792; *see also Isip v. Mercedes-Benz*

8   *USA, LLC*, 155 Cal. App. 4th 19, 25 (2007) ("The Song–Beverly Consumer Warranty Act

9   provides a right of action for a buyer to recover damages and other relief when there has been a

10  breach of the implied warranty of merchantability.")  The Parties agree Amazon did not

11  manufacture the artificial tears.  (Dkt. No. 36 ¶ 20.)  Amazon contends it is also not a "retell

12  seller," so, the implied warranty of merchantability under the Song-Beverly Act does not apply to

13  Amazon.

14        Under California law, a "'[s]ale' means either of the following: (1) The passing of title

15  from the seller to the buyer for a price.  (2) A consignment for sale."  Cal. Civ. Code § 1791(n).

16  Plaintiff does not allege Amazon ever possessed title for the artificial tears.  Instead, Plaintiff

17  argues Amazon "consigned EzriCare's Artificial Tears for sale" because "Mr. Reynolds paid

18  Amazon for the product, and thereafter, upon information and belief, Amazon paid EzriCare for

19  the sale."  (Dkt. No. 54 at 9.)

20        In California, "'[c]onsignment' means a transaction, regardless of its form, in which a

21  person delivers goods to a merchant for the purpose of sale."  Cal. Com. Code § 9102.  Further:

23            The definition of "consignment" requires that the goods be delivered
              "to a merchant for the purpose of sale." If the goods are delivered for
              another purpose as well, such as milling or processing, the transaction
24            is a consignment nonetheless because a purpose of the delivery is
              "sale." On the other hand, if a merchant-processor-bailee will not be
25            selling the goods itself but will be delivering to buyers to which the
              owner-bailor agreed to sell the goods, the transaction would not be a
26            consignment.

27  Cal. Com. Code § 9102 Cmt. 14.

28        Plaintiffs allege Mr. Reynolds "purchased two bottles of EzriCare Artificial Tears from

United States District Court
Northern District of California

1   Amazon." (Dkt. No 36 ¶ 35.). Further, Plaintiffs assert Amazon "stored the product in its

2   warehouses, facilitated message boards for the product," and any "returns [of the product were

3   made through Amazon."  (*Id.* ¶ 41.)  Construing the facts most favorably to Plaintiffs, Plaintiffs

4   plausibly allege Amazon "consigned" the EzriCare Artificial Tears.  Amazon's arguments to the

5   contrary rely on inferences in its favor, rather than Plaintiffs' favor.

6   **B.     Implied Warranty under the California Uniform Commercial Code**

7   "An implied warranty that the goods 'shall be merchantable' and 'fit for the ordinary

8   purpose' is contained in California Uniform Commercial Code section 2314."  *Isip v. Mercedes-*

9   *Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007).  "Vertical privity is a prerequisite in California

10  for recovery on a theory of breach of the implied warrant[y] of . . . merchantability."  *U.S.*

11  *Roofing, Inc. v. Credit All. Corp.*, 228 Cal. App. 3d 1431, 1441 (Ct. App. 1991).  "A buyer and

12  seller stand in privity if they are in adjoining links of the distribution chain."  *Mega RV Corp. v.*

13  *HWH Corp.*, 225 Cal. App. 4th 1318, 1333 n.11 (2014), *as modified on denial of reh'g* (May 20,

14  2014) (quoting *Clemens v. DaimlerChrysler Corp.* 534 F.3d 1017, 1023 (9th Cir.2008)).

15  Amazon argues there is no vertical privity between Plaintiffs and Amazon because

16  Plaintiffs purchased the eye drops from EzriCare, who was a third-party seller on Amazon selling

17  its own product.  Specifically, Amazon alleges Plaintiffs concede Mr. Reynolds purchased the

18  tears from EzriCare, and therefore Plaintiffs could not have purchased the product from Amazon.

19  In the introduction of Plaintiffs' response to Amazon's motion, Plaintiffs state: "This case arises

20  from Plaintiff Milton Reynolds' use of contaminated Artificial Tears eyedrops, which were

21  labeled, marketed, distributed, and sold by Defendant EzriCare, LLC ('EzriCare') on Amazon's

22  marketplace." (Dkt. No. 54 at 4.)  Amazon also supports its contention EzriCare alone sold the

23  artificial tears by citing to the receipt for the purchase, which states "Sold By" and then lists

24  "EzriCare."  (Dkt. No. 44-3 at 2.)  However, neither Plaintiff's opposition motion nor Amazon's

25  receipt conclusively establishes Amazon was *not* a "seller" of EzriCare's Artificial Tears—as

26  Amazon has not established as a matter of law that multiple entities cannot be considered

27  "sellers."  Drawing all inferences in Plaintiffs' favor, Amazon has not established it was not a

28  "seller."

United States District Court
Northern District of California

21

1       Amazon also cites *Diew v. Amazon.com Servs., LLC*, which dismissed an implied warranty

2 claim against Amazon and stated: "Holding Amazon responsible for an exploding battery on a

3 theory of product liability is much different than extending liability to it for the breach of an

4 implied warranty." No. 21-CV-01462-LB, 2021 WL 2435265, at *6 (N.D. Cal. June 15, 2021).

5 But *Diew* does not explain why implied warranty claims are different. And in *Diew*, the court

6 dismissed the implied-breach-of-warranty claim "without prejudice and with leave to amend." *Id.*

7 at *6.

8       As discussed at the oral hearing, whether Amazon can be held liable for third-party sellers

9 under an implied-breach-of-warranty claim remains undecided by California courts. However,

10 California caselaw indicates policy may favor holding Amazon liable in such a scenario. The

11 implied warranty of merchantability rests on the idea consumers rely on a seller's "judgment" in

12 selecting products, so sellers should bear the burden if the product turns out to be harmful. *See*

13 *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1059 (2008) (explaining the plaintiff

14 could not bring an implied warranty claim because "there is no evidence [the plaintiff] relied on

15 [the defendant's] judgment that the Valve was appropriate for her"); *Windham at Carmel*

16 *Mountain Ranch Assn. v. Superior Ct.*, 109 Cal. App. 4th 1162, 1168 (2003) ("Implied warranties

17 are based on implied representations rather than on promises); *Gherna v. Ford Motor Co.*, 246

18 Cal. App. 2d 639, 652 (Ct. App. 1966) ("As to the warranty of merchantability, it becomes

19 apparent that manufacturers who enter into promotional activities to stimulate consumer buying

20 may thereby incur both express and implied warranty obligations."). At this state in the

21 proceedings, it is not implausible Mr. Reynolds relied on Amazon's judgment in selecting the

22 product here, so the underlying policy of the implied warranty of merchantability indicates

23 California courts may find Amazon liable under an implied warranty of merchantability claim.

24       Moreover, while not directly addressing the implied warranty of merchantability,

25 California appellate courts have recently expanded Amazon's liability in products liability actions.

26 In *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 453 (2020), a California appellate court

27 analyzed whether Amazon could be held liable under a theory of strict products liability for

28 defects in third-party products sold through its website. The court explained:

1

2

3

4

5

6

> Amazon is an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. Amazon was involved in the vertical distribution of consumer goods and responsible for passing the product down the line to the consumer. It was one of the entities responsible for placing a defective product into the stream of commerce. Amazon enabled [the third-party seller] to offer the replacement battery for sale, inventoried and stored the replacement battery, accepted [the plaintiff's] order for the battery, billed [the plaintiff] the purchase price for the battery, received her payment, retrieved the battery from its inventory, and shipped the battery to her in Amazon-branded packaging.

7 *Id.*  Similarly, in *Loomis v. Amazon.com LLC*, another California Court of appeals held "Amazon

8 is a link in the vertical chain of distribution."  63 Cal. App. 5th 466, 481 (2021).

9     California appellate courts have also indicated entities involved in the sale who are not the

10 seller can be held liable for an implied warranty of merchantability claim.  In *U.S. Roofing, Inc. v.*

11 *Credit All. Corp.*, U.S. Roofing entered a lease agreement in which U.S. Roofing selected

12 equipment from Liquid Asphalt Systems, and Leasing Service Corporation purchased the

13 equipment from Liquid Asphalt Systems and leased it to U.S. Roofing.  228 Cal. App. 3d 1431,

14 1439 (Ct. App. 1991).  U.S. Roofing then sued Liquid Asphalt Systems—the equipment

15 supplier—for breach of implied warranty.  Liquid Asphalt Systems asserted it was "not liable for

16 any breach of implied warranty as a matter of law" because "there is no privity of contract

17 between [Liquid Asphalt System] and U.S. Roofing."  *Id.* at 1441.  After noting vertical privity is

18 required for an implied-warranty-of-merchantability-claim, the court explained Liquid Asphalt's

19 Systems argument "focuses solely on the paper contract; it ignores the considerable testimony

20 regarding the direct dealings between [Liquid Asphalt Systems] and U.S. Roofing for the sale and

21 purchase of the" equipment.  *Id.* at 1442.  The court explained the parties had an oral agreement

22 for the sale of the equipment supported by a deposit of earnest money, Liquid Asphalt Systems

23 made at least one express warranty, and if "U.R. Roofing experienced problems with the

24 [equipment], it contacted [Liquid Asphalt Systems for relief."  *Id.*  The court concluded "[f]rom

25 this evidence the jury could find the necessary privity to support liability for breach of an implied

26 warranty."  *Id.*  The same reasoning may apply to Plaintiffs' dealing with Amazon.

27     But, at this time, the Court declines to finally decide the issue.  Plaintiffs and Amazon both

28 agreed allowing the implied warranty of merchantability claim to go forward would not lead to

additional discovery, as the other claims' discovery will encompass the discovery necessary for the implied warranty claim.  Moreover, since this is a novel legal theory, the Court declines to rule on it without the benefit of a full record.  So, the Court DENIES Amazon's motion to dismiss.

## CONCLUSION

For the reasons stated above, the Court DENIES EzriRx's motion to dismiss for lack of personal jurisdiction because Plaintiffs have alleged their injury relates to EzriRx's forum contacts.  The Court GRANTS IN PART and DENIES IN PART EzriCare's motion to dismiss. The following claims against EzriCare are dismissed:

(1) Negligent Failure to Recall (Count VI)

(2) Fraud (Count VIII)

All other claims against EzriCare survive.  Plaintiffs shall file any amended complaint as to the dismissed claims by November 20, 2023.  Further, the Court DENIES EzriCare's motion to stay and DENIES Amazon's motion to dismiss.

The Court sets an Initial Case Management Conference for November 30, 2023, at 1:30 p.m. by a Zoom videoconference. A Joint Case Management Conference Statement is due by noon on November 22, 2023.

**IT IS SO ORDERED.**

This Order Disposes of Docket Numbers:  41, 42, 43, 44.

Dated: October 30, 2023

JACQUELINE SCOTT CORLEY
United States District Judge